UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VALARIE D. COATES, | : | Civil No. 13-4442 (JEI/AMD) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| COOPER HEALTH SYSTEM / COOPER UNIVERSITY HEALTH CARE, | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES**:

OFFICE OF GERALD POMERANTZ
By:  Barak Kassutto, Esq.
Stephen Girard Building
21 South 12th Street, 7th Floor
Philadelphia, Pennsylvania 19107
            Counsel for Plaintiff

BROWN & CONNERY LLP
By:  Christine P. O'Hearn, Esq.
     Eric D. Milavsky, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
            Counsel for Defendant

**IRENAS,** Senior United States District Judge:

    Plaintiff Valarie Coates, a nurse, brings this wrongful termination suit against her former employer, Defendant Cooper Health System.  Cooper presently moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

1

upon which relief may be granted.  For the reasons stated herein, the Motion will be granted in part and denied in part.

## I.

The Amended Complaint alleges the following facts.

In February, 2011, Coates applied for a senior management Obstetrical Clinical Educator position at Cooper.  Coates progressed through three rounds of interviews but Cooper selected another applicant already employed by Cooper.  When Cooper's Human Resources Specialist, Bernadette Collins called Coates to inform her of the decision, Collins stated that Coates was a very strong candidate and that "they had wanted her on their team."  (Amend. Compl. ¶ 18)

In June, 2011, Coates accepted a different position with the Philadelphia Department of Public Health.

Close to a year later, in May, 2012, Collins called Coates to inquire whether Coates was still interested in the position at Cooper.  Collins explained that "there had been an unexpected illness . . . that had resulted on the Clinical Educator's position vacancy."  (Amend. Compl. ¶ 23)  Collins asked whether Coates "would consider leaving her current position if she were offered" the position with Cooper.  (Amend. Compl. ¶ 24)  Coates said yes, and shortly thereafter, Coates interviewed once again at Cooper.

On May 17, 2012 Coates "was offered and verbally accepted" the Clinical Educator position.  Cooper then sent Coates the following letter:

2

Dear Valerie,

Congratulations!  I am delighted that you have chosen to join us at Cooper University Hospital.  You've joined a highly committed and talented team . . . . Our commitment extends to you as well; Cooper is proud to offer abundant opportunities for development and career growth, and we are confident that you will enjoy a very rewarding career with us.

As discussed, you have accepted our offer to join the Clinical Educators Department as a full-time Clinical Educator II.  Your compensation will be $45.67 per hour, and your start date is anticipated to be July 23, 2012.  Our offer of employment is contingent upon your passing a pre-placement medical examination, including drug/alcohol screening, background check and receipt of references satisfactory to Cooper University Hospital.  Continuation of employment will be based on the successful completion of the standard three-month probationary period. . . . Your employment is at-will, which means you or Cooper may terminate the employment relationship at any time for any reason, or no reason at all.  This offer is contingent upon you receiving your [New Jersey Registered Nurse] License.

To welcome you to Cooper, you have been scheduled to attend Cooper's two-day New Employee Orientation . . . .

Immediately following New Employee Orientation, you are scheduled to attend patient Care Services Orientation . . . .

Attendance at both New Employee and Patient Care Services orientation is mandatory.

Please accept my sincere congratulations and best wishes for a rewarding career with Cooper University Hospital.  Please sign below indicating your acknowledgement and acceptance of the foregoing, and return a signed copy to Human Resources on or before your start date.

Sincerely,
Bernadette M. Collins
HR Employment Consultant

3

(Amend. Compl. Ex. B)

After Coates received the letter, she advised Cooper that she needed additional time before her first day of work. Cooper sent her an identical letter with the start date changed to August 8, 2012. (Amend. Compl. Ex. C) Coates signed the letter and returned it to Cooper.

Over several days in August, 2012, Coates participated in the orientation seminars identified in the letter. "During this time [Coates] held personal meetings with at least 16 of [Cooper's] employees, including the Director of Maternal Fetal Medicine, the NICU Clinical Director and Medical Director of Labor and Delivery. These meetings generally lasted for a minimum of one hour. At no time was there any feedback regarding dissatisfaction or concern regarding [Coates's] performance, interest, or enthusiasm in performing the position for which she has been hired." (Amend. Compl. ¶ 38)

Coates then began her normal duties, except that she complied with the relevant state regulations which prevented her from performing certain tasks because she was not yet licensed in New Jersey.

Around this same time, in connection with Cooper's normal pre-placement medical screening, Cooper became aware that Coates had previously suffered two "myocardial infarcts" (heart attacks)-- one sometime in 2009 or 2010, and one on February 29, 2012. Cooper was also aware that Coates is African American, and that African

4

Americans are at "increased medical risk [for] heart related illness."  (Amend. Compl. ¶ 59)[1]

On September 11, 2012, Cooper fired Coates "due to an alleged 'lack of enthusiasm and leadership.'"  (Amend. Compl. ¶ 44)

The Amended Complaint contains four counts: (1) discrimination based on race and perceived physical disability in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.; (2) "racial profiling" discrimination in violation of 42 U.S.C. § 1981; (3) promissory estoppel; and (4) breach of contract / breach of the implied covenant of good faith and fair dealing.

Cooper moves to dismiss all claims.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not

---

[1]  The Amended Complaint cites a *New England Journal of Medicine* article which Coates alleges provides support for a conclusion that African Americans are at higher risk for cardiovascular illnesses. Additional scientific research is cited in Coates's opposition brief.

required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

The Court first addresses the common law contract claims before turning to the statutory discrimination claims.

### A.

Cooper argues that it cannot be liable for breach of contract / breach of the covenant of good faith and fair dealing[2] because even assuming *arguendo* that the letter it sent Coates was a contract, the express terms of the contract state that: (1) "[y]our employment is at-will, which means you or Cooper may terminate the employment relationship at any time for any reason, or no reason at all;" and (2) "[c]ontinuation of employment will be based on the successful

---

[2] Both Coates's Amended Complaint and her opposition brief make no distinction between her breach of contract claim and her breach of the duty of good faith and fair dealing claim, therefore the Court addresses them together.

6

completion of the standard three-month probationary period." (Amend. Compl. Ex. B, C)

In opposition, Coates concedes that the letter provided for employment at-will, but argues that the letter required Cooper "to fairly and reasonably notify [Coates] of their alleged dissatisfaction with her job performance and their intention to terminate [Coates]." (Opposition Brief, p. 5) Coates maintains that the implied duty of good faith and fair dealing "mandated Cooper to offer [Coates] honest feedback on her job performance" before firing her. (Id., p. 6)

Coates argues that this duty to evaluate and provide feedback is implied in the probationary period clause. She reasons that "probationary periods of employment include additional scrutiny and feedback on job performance." (Opposition Brief, p. 7)

The Court rejects Coates's argument. As a matter of law, the Court cannot interpret a contract to include an implied term that directly undermines the contract's express terms. *See Kas Oriental Rugs, Inc. v. Ellman,* 394 N.J. Super. 278, 287 (App. Div. 2007) ("Of course, it is true that implied provisions may be deemed included within an express contract, but these implied terms do not override express, inconsistent terms; they are imposed to fulfill the intentions of the parties.").[3] To accept Coates's argument would

---

[3]  *Cf. Wade v. Kessler Inst.*, 172 N.J. 327, 339 (2002) ("An effective disclaimer by the employer may overcome the implication that its employment manual constitutes an enforceable contract of employment [under *Woolley v. Hoffmann-La Roche*, 99 N.J. 284 (1985)]."); *see*

7

contradict the parties' intentions as clearly articulated in the express at-will employment term.  Under Coates's interpretation, Cooper's express *unconditional* right to terminate Coates during her probationary period, for any reason or no reason, becomes *conditional*.  According to Coates, Cooper could fire her, but only after they gave her honest feedback on her performance.

The letter states that Cooper has an unconditional right to terminate Coates.  Her proposed implied term irreconcilably conflicts with that right.  Accordingly, the breach of contract / breach of duty of good faith and fair dealing claim fails as a matter of law.  Cooper's Motion to Dismiss will be granted as to Count IV of the Amended Complaint.

**B.**

In support of her promissory estoppel claim, Coates alleges that she "left a job in reliance upon [Cooper's] promise for employment for a reasonable period of time for [Coates] to show she was capable of performing to necessary standards."  (Amend. Compl. ¶ 10)

---

*generally, Keene v. Sears Roebuck & Co.,* 2007 U.S. Dist. LEXIS 66624 at *13-14 (D.N.J. Sept. 7, 2007) ("In New Jersey, the relationship between an employer and its employees is presumed to be for an indefinite amount of time and terminable at the will of either party. The general rule is especially true when the employee expressly acknowledges his at-will status and/or has an individual written employment contract which expressly states that his employment is at-will.  Plaintiff's breach of an implied contract claim is defeated when there is a clear at-will disclaimer.") (internal citations omitted).

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."  *Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington,* 194 N.J. 223, 253 (2008).

In light of the two letters expressly stating that Coates was subject to a three-month probationary period and that her employment was at-will (Amend. Compl. Ex. B, C), her reliance on the alleged "promise of employment for a reasonable period of time" is unreasonable as a matter of law.  Accordingly, her promissory estoppel claim fails.

Cooper's Motion to Dismiss will be granted as to Count III of the Amended Complaint.

### c.

As to both statutory discrimination claims, Cooper argues that the Amended Complaint fails to allege sufficient facts from which a reasonable factfinder could plausibly infer a causal connection between her termination and her race or perceived disability.  According to Cooper, "Coates has done no more than alleged she is a member of protected classes whom Cooper terminated without a valid reason."  (Moving Brief, p. 12)  The Court disagrees.

First, Coates has pled facts that plausibly call into question Cooper's proffered reason for firing Coates.  *Cf. Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994) ("plaintiff must demonstrate such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."). There are at least superficial inconsistencies in Cooper's alleged treatment of Coates. After three rounds of interviews, Cooper allegedly told Coates she was a very strong candidate. Then, almost a year later, Cooper initiated contact with Coates, and interviewed Coates once again. After this fourth interview, Cooper offered Coates the job.

These facts are plausibly inconsistent with Cooper's assertion that Coates demonstrated a lack of enthusiasm and leadership less than four weeks into her employment. A reasonable factfinder could plausibly infer that Cooper had ample opportunity to assess Coates's enthusiasm and leadership abilities over the course of four separate interviews-- indeed, Cooper would not have approached her for a fourth interview, and then hired her-- if it concluded she lacked these qualities.

Second, the timing of Coates's termination so early in her employment, and against the backdrop of Cooper's alleged initial enthusiasm about Coates, is plausibly suggestive of pretext. According to the facts alleged and the plausible inferences drawn therefrom, Cooper was enthusiastic about Coates joining its team, and only changed its tune once it had concluded, based on her race, and recently disclosed heart attacks, that she was at high risk for illness-related absences. Further, Coates argues that Cooper was

10

especially sensitive to illness-related absences because Coates's predecessor resigned due to illness.

At the pleadings stage, Coates has alleged sufficient facts plausibly supporting a conclusion that Cooper fired her because of her race and perceived disability. Cooper's Motion to Dismiss Counts I and II of the Amended Complaint will be denied.

**IV.**

In light of the foregoing, Cooper's Motion to Dismiss will be granted as to the common law claims and denied as to the statutory claims. An appropriate Order accompanies this Opinion.


Date: April 7, 2014           ___s/ Joseph E. Irenas_____
                              JOSEPH E. IRENAS, S.U.S.D.J.